# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

CHRISTOPHER ADAM DOLLAR,

    *Plaintiff*,

vs.

BEN GUTIERREZ*, et al.*

    *Defendants*.

3:14-cv-00038-RCJ-VPC

ORDER

This *pro se* prisoner civil rights action comes before the Court for initial review of the complaint as well as on plaintiff's motion (#1-2) for leave to file excess pages and motion (#1-3) for appointment of counsel. The Court is deferring action on the pauper application (#1) at this time.

### *Screening*

When a "prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," the court must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint: (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

In considering whether the plaintiff has stated a claim upon which relief can be granted, all material factual allegations are accepted as true for purposes of initial review and are to be construed in the light most favorable to the plaintiff. *See, e.g., Russell v. Landrieu*, 621 F.2d 1037, 1039 (9th Cir. 1980). However, mere legal conclusions unsupported by any actual

allegations of fact are not assumed to be true in reviewing the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). That is, bare and conclusory assertions that constitute merely formulaic recitations of the elements of a cause of action and that are devoid of further factual enhancement are not accepted as true and do not state a claim for relief. *Id.*

Further, the factual allegations must state a plausible claim for relief, meaning that the well-pleaded facts must permit the court to infer more than the mere possibility of misconduct:

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).] A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.*, at 557, 127 S.Ct. 1955 (brackets omitted).
>
> . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Iqbal*, 556 U.S. at 678.

Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519 (1972).

Plaintiff Christopher Dollar seeks damages and injunctive relief from, in their individual and official capacities, Registered Nurse Ben Gutierrez, Dr. Francisco Sanchez, M.D., and Dr. Romeo Aranas, M.D., as well as, in their official capacity, James Cox and Catherine Cortez Masto.

Plaintiff's in the main alleges deliberate indifference to his medical needs.

Placed in chronological order, the complaint alleges, *inter alia*, the following pertinent medical history. Nothing stated herein in summarizing the allegations constitutes a statement of fact or a finding by this Court. Plaintiff's actual factual allegations, but not his conclusory or formulaic allegations, are assumed to be true for purposes of this review only.

On and after August 4, 2011, plaintiff "complained of various medical issues starting with lumps in [his] chest area as well as complications in both knees." Dr. Sanchez saw him seven times at Southern Desert Correctional Center thereafter through October 31, 2012.[1]

Following a December 21, 2011, examination, Dr. Sanchez told plaintiff that he was working out too much. Plaintiff sought to follow the physician's advice for the next six months, but his symptoms continued to worsen, with pain in his shoulder and upper right back, chest lumps, knee trouble, and swelling in his left foot.

At an August 8, 2012, examination, Dr. Sanchez told plaintiff that he was taking a large amount of ibuprofen and acetaminophen, which plaintiff asserts can cause liver and kidney problems over long periods of time. It appears from the complaint that nurses were providing the ibuprofen and acetaminophen as they could not authorize more. Plaintiff alleges that Dr. Sanchez "made no real effort to prescribe any real anti-inflammatory medication."

On September 26, 2012, a female doctor who is not a defendant herein examined plaintiff. Plaintiff alleges that the doctor "conducted various testing . . . to help in diagnosing his complications." Plaintiff otherwise refers to this visit only with regard to what defendant Nurse Gutierrez allegedly said to plaintiff afterwards, which is discussed further, *infra*.

At a November 29, 2012, examination, Dr. Sanchez x-rayed plaintiff's knee for the first time and prescribed naproxen.

At an examination on or about March 14, 2013, Dr. Sanchez ordered that plaintiff be given joint balm and a knee brace, prescribed naproxen and a Tylenol pack, and scheduled plaintiff for a followup visit in three weeks.

On or about March 15, 2013, Dr. Sanchez scheduled for plaintiff to see Dr. Aranas, who is alleged variously to be the "head doctor" and the department medical director.

---

[1] It is not clear whether the time line set forth in the "Nature of the Case" portion of the complaint fully lines up with the time line in the counts. Plaintiff provided three pages of particularized allegations in the "Nature of the Case." Under the instructions, this portion of the complaint form instead is intended to provide only a brief background description of the nature of the action, such as: "The defendants were deliberately indifferent to serious medical needs." All operative factual allegations instead must be included within the counts themselves.

1    Plaintiff alleges as follows with regard to his March 15, 2013, meeting with Dr. Aranas:

2 . . . . Dr. Aranas expressed an aggressive demeanor
3 toward plaintiff and his medical concerns in which he vehemently
refused to do any additional testing (i.e., MRI, CAT scan, etc. . .
4 as the x-rays were not showing anything) and proceeded to
improperly diagnose plaintiff.

5 When plaintiff tried to explain his medical concerns mainly
his knee trouble the off and on swelling and the inability to fully
6 extend his left leg without excruciating pain he then said "You are
extending it enough" and kicked plaintiff out of his office.
7

8    #1-1, at electronic docketing pages 12-13.

9    At the April 4, 2013, followup visit with Dr. Sanchez, plaintiff told the physician that Dr.

10   Aranas had refused to do any additional testing. Dr. Sanchez allegedly told plaintiff that only

11   Dr. Aranas could make referrals to the utilization review panel. Dr. Sanchez made a referral

12   to Dr. Aranas with a notation.

13   In May 2013, plaintiff saw Dr. Aranas again.

14   Plaintiff alleges as follows with regard to the May 2013 meeting:

15 . . . [D]uring the visit Defendant Dr. Aranas showed plaintiff
some records and charts (which plaintiff did not understand) and
16 did not take time to explain them to plaintiff . At the end of the
visit the plaintiff told Defendant Dr. Aranas that he needed a refill
17 on his Naproxen 500 mg as he was out at the time and working
his assigned detail in the culinary [was] excruciatingly painful
18 without his medication. Defendant Dr. Aranas then told the
plaintiff that he must sign an advisory acknowledgment about the
19 dangers of taking Naproxen 500 mg over long periods of time or
he was not going to give the plaintiff anything at all.
20

21   #1-1, at electronic docketing page 14. Plaintiff alleges that he signed the acknowledgment

22   because "that was the only medication the plaintiff was receiving to assuage the pain and

23   swelling."

24   At a May 13, 2013, examination by Dr. Sanchez, plaintiff told him about the visit with

25   Dr. Aranas and "how no progress had been made pertaining to his condition or a diagnosis."

26   Dr. Sanchez "then said he would make the referral to see an outside specialist as he needed

27   help with plaintiff's particular case." Plaintiff asserts that this action was inconsistent with Dr.

28   Sanchez' earlier alleged statement that only Dr. Aranas could make a referral to the utilization

review panel.  The referral in any event was granted, and plaintiff was transferred to the regional medical facility at the Northern Nevada Correctional Center.

On July 18, 2013, Dr. Gedney, who is not a defendant herein, examined plaintiff.  The complaint alleges that "she thoroughly assessed plaintiff's medical concerns and did various physical testing (none of which had been done by Defendants Dr. Sanchez or Dr. Aranas)."  Plaintiff alleges that Dr. Gedney prescribed prednisone "to see how it would affect the plaintiff and told him that she would see him in [two] weeks to see what effect the prednisone . . . would have on him."

At an August 1, 2013, followup visit, plaintiff told Dr. Gedney that "the medication had an significant effect but nothing noteworthy."  Dr. Gedney discontinued the medication.

Plaintiff then was transferred to Warm Springs Correctional Center.  He alleges that he submitted a medical kite (inmate request form) to see the physician to discuss "his prednisone."

Plaintiff alleges as follows regarding the followup while at that facility:

> The Plaintiff was seen by Dr. Do Mar [who is not a defendant] on August 13, 2013. [T]he Doctor assessed the plaintiff in a similar way [as] Dr. Gedney had done.  Dr. Do Mar put plaintiff back on his prednisone . . . pending another visit to Dr. Gedney which occurred a few weeks later.  She noted [that] plaintiff was doing much better considering the prior visit.  She then made notations for Dr. Do Mar.

#1-1, at electronic docketing page 15.

Plaintiff concludes his recital of the pertinent medical history with the following:

> Plaintiff is still being treated being that no official diagnosis has been made of his condition.  His treating physician is Dr. Do Mar and periodically Dr. Gedney whom is an internal specialist.  Defendants Dr. Sanchez and Dr. Aranas have a policy as well as a history of not even providing adequate care and treatment and overcharging inmates as well . . . .

#1-1, at 15.

The two counts of the complaint do not state a claim upon which relief may be granted under the Eighth Amendment against Dr. Sanchez in his individual capacity.  In order to state a claim for relief under the Eighth Amendment for deliberate indifference to a serious medical

need, the plaintiff must present factual allegations tending to establish that the defendant official knew of and disregarded an excessive risk to inmate health or safety. *See, e.g., Simmons v. Navajo County, Arizona*, 609 F.3d 1011, 1017-18 (9th Cir. 2010).  The official both must be aware of the facts from which the inference of an excessive risk to inmate health or safety could be drawn, and he also must draw the inference. *Id.*  In other words, a plaintiff must show that the official was "(a) *subjectively* aware of the serious medical need and (b) failed adequately to respond." *Id.*, (quoting prior authority, with emphasis in original). Medical misdiagnosis, differences in medical opinion, medical malpractice, and negligence do not amount to deliberate indifference to a serious medical need under the Eighth Amendment. *See, e.g., McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1992), *rev'd on other grounds*, *WMX Tech., Inc. v. Miller*, 104 F.3d 1133 (9th Cir.1997)(*en banc*); *Sanchez v. Vild*, 891 F.2d 240, 241-42 (9th Cir.1989).

Plaintiff's actual factual allegations, as opposed to his conclusory formulaic assertions, would establish that Dr. Sanchez saw plaintiff multiple times for his complaints, first attempted the conservative measure of reducing plaintiff's physical activity, ultimately x-rayed his knee and prescribed naproxen as well as other treatment measures, referred him twice to his supervising physician, and then referred him to a specialist for further examination and treatment.  Nothing in that course of care reflects that Dr. Sanchez had actual subjective knowledge that plaintiff had a specific and more serious condition that immediately required different care prior to the other treatment that he directed.  Indeed, through the time of the complaint, a definitive diagnosis in fact had not yet been established, even after plaintiff had been seen by five different doctors.

A physician does not violate the Eighth Amendment simply because he is not successful in finding a treatment protocol more quickly to mitigate an inmate's pain from a condition, particularly one that, through the time of the complaint, defied diagnosis.  Nor does the Eighth Amendment require a physician to administer one nonsteroidal anti-inflammatory drug (NSAID), such as naproxen, rather than another, such as ibuprofen, or in lieu of an analgesic such as acetaminophen, or to do so earlier in a course of treatment.  Nor does the

1  Eighth Amendment prohibit the administration of either ibuprofen or acetaminophen, or any
2  other federally approved medication, due to allegedly possible adverse side-effects, which
3  nothing reflects that plaintiff suffered here.
4       In short, the Eighth Amendment does not constitutionalize medical malpractice
5  standards. Plaintiff wanted Dr. Sanchez to do something different sooner than what he did,
6  up to the treating physician's referral to a specialist. However, establishing only a difference
7  in medical opinion as to the proper course of care for the still-undiagnosed condition does not
8  establish an Eighth Amendment violation.[2]
9       Nor does the complaint state a claim upon which relief may be granted under the
10 Eighth Amendment against Dr. Aranas. Nothing in plaintiff's allegations tends to establish
11 that Dr. Aranas was subjectively aware that plaintiff had a more serious condition that
12 immediately required different care than he then was receiving. The Eighth Amendment does
13 not constitutionalize a requirement that a health care provider must have a warm and
14 empathetic bedside manner or that he must explain things to a patient's satisfaction. Again,
15 an Eighth Amendment violation requires a particular subjective state of mind, and plaintiff's
16 actual factual allegations do not tend to establish the presence of that state of mind.
17      The complaint further does not state a claim upon which relief may be granted under
18 the Eighth Amendment against Nurse Gutierrez.
19      Plaintiff alleges in particular as to this defendant as follows. After the unnamed female
20 physician had completed her examination on September 26, 2012, Gutierrez allegedly
21 "accosted" plaintiff and asked: "Are there any other issues you're having?" When plaintiff told
22 the nurse about his other ailments (off and on swelling in his knees and left foot) and his

---

[2] The Court notes that plaintiff alleges, on the one hand, that he had difficulty walking from his cell to meals at the prison but, on the other, that he took a job with prison culinary that exacerbated his symptoms. Plaintiff points to the fact that work credit can reduce his sentence. Be that as it may, inmates must make choices with attendant consequences just as other individuals must. Plaintiff did not necessarily make the job of his treating physicians any easier by working in culinary at a time when he maintained that he could walk to meals only with difficulty. If an inmate chooses to engage in employment that aggravates his symptoms so that he can reduce his sentence, then the Eighth Amendment most certainly does not make his treating physician a guarantor that that choice will be a pain free one. No physician, in a prison or otherwise, can guarantee that all patients will be pain or symptom free at all times at all activity levels.

-7-

difficulty walking, Gutierrez allegedly said: "You don't need to walk, you're in the hole," referring to plaintiff then being in administrative segregation. According to the complaint, when plaintiff thereafter filed an informal grievance, Gutierrez allegedly lied by stating in response to the grievance that all of plaintiff's questions had been answered and that plaintiff had said that all of his concerns had been addressed.

Nothing in the foregoing allegations states a claim for relief under the Eighth Amendment, or otherwise. Plaintiff already had been seen by the physician. Nothing in the nurse's statements either before or after the incident plausibly had anything to do with the care that plaintiff received from treating physicians thereafter. Clearly, nothing in the allegations establish that the nurse – who was not the primary care provider – was subjectively aware of a serious medical condition and failed to respond with adequate treatment in a context where the physician had just seen the plaintiff. Verbal abuse, assault, harassment, disrespect, rudeness, or brusqueness otherwise is not actionable under § 1983. *E.g., Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987). The Constitution does not impose a civility code on state actors. Nor does allegedly lying in response to a grievance give rise to a viable Eighth Amendment or other constitutional claim. Under well-established law, an inmate does not have a constitutional right to have his grievances either handled correctly or processed in a particular manner. *See, e.g., Seely v. Gibbons*, 2013 WL 6440206 (9th Cir. Dec. 10, 2013); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003). Clearly, the federal courts are not going to relitigate the myriad disputes that arise in a state's prison grievance system – here on an underlying claim that an employee was rude – in order to adjudicate claims that a state corrections employee lied during the grievance process.

Plaintiff therefore does not state a claim for relief against defendants Sanchez, Aranas, and Gutierrez in their individual capacity.

Plaintiff further does not state a viable claim for relief against any defendant in their official capacity.

Plaintiff does not state a claim for relief against any of the defendants in their official capacity for monetary damages. First, claims for monetary damages from the individual

defendants in their official capacity are barred by state sovereign immunity under the Eleventh Amendment. *See, e.g., Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Cardenas v. Anzal*, 311 F.3d 929, 934-35 (9th Cir. 2002). Second, state officials sued in their official capacity for damages in any event are not "persons" subject to suit under 42 U.S.C. § 1983. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 & n.10 (1989).

Plaintiff does not state a viable claim against any defendant in their official capacity for injunctive relief because he does not state a viable Eighth Amendment claim in the first instance.

Moreover, plaintiff has no basis for seeking any relief in this action against the Nevada Attorney General, Catherine Cortez Masto. Plaintiff states in the list of defendants only that Masto is the "legal representation for the defendants who violated Plaintiff's civil rights." This allegation provides no basis for proceeding against Masto in this action, in any capacity.

The Court therefore will dismiss the complaint without prejudice for failure to state a claim upon which relief may be granted, subject to an opportunity to amend to correct the deficiencies in the original complaint to the extent possible.

### *Motions*

The motion for leave to file excess pages with the complaint will be granted subject to the remaining provisions of this order.

On the motion for appointment of counsel, there is no constitutional right to appointed counsel in a § 1983 action. *E.g., Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997), *opinion reinstated in pertinent part*, 154 F.3d 952, 954 n.1 (9th Cir. 1998) (*en banc*). The provision in 28 U.S.C. § 1915(e)(1), however, gives a district court the discretion to request that an attorney represent an indigent civil litigant. *See, e.g., Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986); 28 U.S.C. § 1915(e)(1)("The court may request an attorney to represent any person unable to afford counsel."). Yet the statute does not give the court the authority to compel an attorney to accept appointment, such that counsel remains free to decline the request. *See Mallard v. United States District Court*, 490 U.S. 296 (1989). While the decision to request counsel is a matter that lies within the discretion of the district court,

the court may exercise this discretion to request counsel only under "exceptional circumstances." *E.g., Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). A finding of exceptional circumstances requires an evaluation of both the likelihood of success on the merits and the plaintiff's ability to articulate his claims pro se in light of the complexity of the legal issues involved. *Id.* Neither of these factors is determinative and both must be viewed together before reaching a decision. *Id.*

In the present case, the Court does not find that exceptional circumstances warrant requesting a private attorney to voluntarily represent plaintiff in this matter. There is little likelihood of success on the merits, not because of any inability by plaintiff to articulate his claims but instead because of the underlying factual scenario presented. The Eighth Amendment, again, does not constitutionalize medical malpractice standards. Plaintiff in any event has demonstrated an adequate ability to articulate his claims and seek relief *pro se.*

IT THEREFORE IS ORDERED that the Clerk of Court shall file the complaint and that the complaint is DISMISSED without prejudice for failure to to state a claim upon which relief may be granted, subject to leave to amend within **thirty (30) days** of entry of this order to correct the deficiencies in the complaint if possible.

IT FURTHER IS ORDERED that plaintiff shall clearly title any amended complaint filed as an amended complaint by placing the word "AMENDED" immediately above "Civil Rights Complaint" on page 1 in the caption and shall place the docket number, **3:14-cv-00038-RCJ-VPC**, above the word "AMENDED" in the space for "Case No." Under Local Rule LR 15-1, any amended complaint filed must be complete in itself without reference to prior filings. Thus, any allegations, parties, or requests for relief from prior papers that are not carried forward in the amended complaint no longer will be before the Court.

IT FURTHER IS ORDERED that action on the pauper application (#1) is deferred at this time.

IT IS FURTHER ORDERED that the Clerk also shall file plaintiff's motion (#1-2) for leave to file excess pages, that the motion is GRANTED subject to the remaining provisions herein, and that the Clerk shall reflect on the docket the grant of the motion by this order.

IT IS FURTHER ORDERED that the Clerk shall file plaintiff's motion (#1-3) for appointment of counsel, that the motion is DENIED, and that the Clerk shall reflect on the docket the denial of the motion by this order.

If an amended complaint is filed in response to this order, the Court will screen the amended pleading before ordering any further action in this case.

If plaintiff does not timely mail an amended complaint to the Clerk for filing, a final judgment dismissing this action will be entered without further advance notice. If the amended complaint does not correct the deficiencies identified in this order and otherwise does not state a claim upon which relief may be granted, a final judgment dismissing this action will be entered. In either event, the pauper application will be acted on in connection with the judgment.

The Clerk shall SEND plaintiff with two copies of a blank § 1983 complaint form and one copy of the instructions for same, along with a copy of the original complaint that he submitted.

DATED: July 9, 2014

_____
ROBERT C. JONES
United States District Judge